[Civ. No. 20208.   First Dist., Div. Two.   Oct. 18, 1962.]

MURRAY MATTAL, Plaintiff and Appellant, v. AMER-
ICAN TRUST COMPANY et al., Defendants and Re-
spondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Albert E. Levy for Plaintiff and Appellant.

Eugene Elerding and Jno. U. Calkins, Jr., for Defendants and Respondents.

SHOEMAKER, J.—Plaintiff Murray Mattal brought this action against defendants American Trust Company and Jane Kiesel to recover damages for breach of a covenant in a written lease.

The complaint alleged that on February 15, 1960, defendants leased to the plaintiff a certain building located in Lafayette, California[1]; that the lease, which was incorporated by reference into the complaint, provided in part as follows: "19. If the demised premises be damaged or destroyed by fire or other casualty and they cannot be repaired or restored within sixty (60) days after possession is given to the Lessor for the purpose of so restoring the same, this lease shall terminate and the parties hereto shall be released from all obligation hereunder thereafter accruing; but if the damage so caused can be repaired within said period of sixty (60) days, the Lessor shall repair the demised premises at the Lessor's own cost and expense. . . . With respect to any damages of the demised premises which the Lessor is obligated to repair under the terms of this paragraph, the provisions of Section 1932, subdivision 2, and of Section 1933,

---

[1]Although the written lease was signed only by the plaintiff and the American Trust Company, Jane Kiesel appears to have been named as an additional defendant for the reason that the bank was acting as her agent in executing the lease.

subdivision 4 of the Civil Code of the State of California are waived by the Lessee''; that on April 20, 1960, a fire damaged the demised premises; that plaintiff then gave defendants written and oral notice that he considered them obligated under paragraph 19 of the lease to restore the premises; and that defendants failed to comply with this request and informed the plaintiff that they would not restore the premises.

Both defendants answered, denying that the complaint stated a cause of action, and alleging that the leased premises had been damaged in such a manner as to preclude restoration within a 60-day period.

Defendants then moved for summary judgment on the ground that the complaint presented no triable issue of fact. Defendants take the position that the demised building had been completely destroyed by the fire and that paragraph 19 of the lease obligated them only to repair damage but not to restore or rebuild the entire structure subject to the lease. Plaintiff, in opposing the motion for summary judgment, conceded that a complete rebuilding would be necessary but contended that paragraph 19 obligated defendants to undertake such restoration. The only issue of fact tendered by the affidavits of the respective parties was as to whether or not, under paragraph 19 of the lease, the landlord was bound to rebuild.

The trial court, considering this sole question, ruled in favor of defendants' contention, and granted the summary judgment, from which plaintiff appeals.

The problem before this court is whether paragraph 19 of the written lease expressly required respondents to rebuild the demised premises in the event that they were totally destroyed by fire. ▉▉ There can be no doubt that, in the absence of such a covenant, respondents were under no such duty. Civil Code, section 1933, subdivision 4, provides that ''The hiring of a thing terminates . . . [b]y the destruction of the thing hired.'' Accordingly, in the absence of an express agreement to the contrary, respondents' duties as a landlord would immediately have ceased upon the destruction by fire of the demised premises.

▉▉ It is also clear, as respondents point out, that a general covenant to ''repair'' is not in itself sufficient to prevent the application of section 1933. In *Realty & Rebuilding Co.* v. *Rea* (1920) 184 Cal. 565 [194 P. 1024], the court held that a leasehold covenant requiring the lessees to

" 'repair and keep in good order, condition and repair the whole of said premises' " (p. 573) did not obligate them to rebuild a structure which had been completely destroyed. The court stated that a general covenant to repair does not constitute an agreement to rebuild unless the term "repair" also means to replace. "To repair means to mend an old thing, not to make a new thing; to restore to a sound state something which has become partially dilapidated, not to create something which has no existence. [Citation.] When we speak of repairing a thing, the very expression presupposes a thing in existence to be repaired. If a workman undertakes to repair an article, he obviously contemplates making whole an existing article and not the manufacture of something new." (P. 576.) (Also see *Friedman* v. *Isenbruck* (1952) 111 Cal.App.2d 326 [244 P.2d 718].)

Appellant contends, however, that the *Realty* and *Friedman* cases were both decisions construing covenants requiring the *tenant* to repair. He urges that a different rule ought to govern a landlord's covenant to repair. Appellant also asserts that paragraph 19 cannot be viewed merely as a general covenant to "repair" since it expressly requires respondents to repair *or restore* damaged *or destroyed* premises. Since this latter contention is clearly sound, it becomes unnecessary to determine whether the reasoning of the *Realty* case would be equally applicable to a landlord.

Paragraph 19 provided, as above noted, that "If the demised premises be damaged *or destroyed* by fire . . . and they cannot be repaired *or restored* within sixty (60) days after possession is given to the Lessor for the purpose of so *restoring* the same, this lease shall terminate . . . but if the damage so caused can be repaired within said period . . . the Lessor shall repair the demised premises at the Lessor's own cost and expense . . ." (emphasis added). This paragraph, when read as a whole, clearly cannot be construed as a mere covenant to repair. Had such been the intent of the parties, there would have been no reason for the inclusion of any reference to a "destruction" by fire and to a "restoration," as opposed to a "repair," of the building. Although there appears to be no California decision construing the term "restore," the recent New York case of *Manufacturers Trust Co.* v. *Bach* (1961) 32 Misc.2d 858 [223 N.Y.S.2d 86], contains an analysis of the words "restore" or "rebuild" as used in the fire clause of a lease. The court there stated, "The use of the language 'restore' and 'rebuild' is significant. It connotes

more than damage which is repairable [citation]; it implies such destruction of the premises by fire that repairs of the existing structure cannot be made and that a new structure must be built.'' (P. 89 [of 223 N.Y.S.2d].) Similarly, in *Leonardi* v. *Furman* (1957) 83 Ariz. 61 [316 P.2d 487], the court held that the terms ''restore'' and ''repair,'' as employed in a lease, were not synonymous. The court stated, ''We believe there is a clear distinction between 'restore' and 'repair.' A thing may be repaired without being restored. It is restored when it is put back to a former, original, normal or unimpaired condition. . . . Black, Law Dictionary (3d ed. 1933) at page 1505, defines 'reconstruction' as follows: 'To construct again; to rebuild; to *restore* again as an entity the thing which was lost or destroyed.' '' (Pp. 65-66.)

Respondents contend, however, that the words ''destroy'' and ''restore'' appear only in the clause enumerating those contingencies upon which the lease was to terminate. They urge that the subsequent clause, which imposes an affirmative duty on the lessor, refers only to ''repair'' of ''damage'' and accordingly creates no obligation in respect to a total destruction of the building. Respondents thus contend that paragraph 19 can be ''fully understood'' only if it is divided into ''two definitely separate provisions.''

Such an approach to the problem violates the basic canons of contract interpretation. ▓▓ The rule is well established that a lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. (*Goodman* v. *Jonas* (1956) 142 Cal.App.2d 775, 790 [299 P.2d 424].) ▓▓ An interpretation which will give effect and purpose to a provision is more reasonable than one which fails to do so. (*Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 620 [11 Cal.Rptr. 634].) If respondents were correct in contending that the first clause of paragraph 19 was intended to serve no other purpose than to set forth certain conditions upon which the lease would terminate, the parties certainly would have made no reference to the restoration of the premises or to the transferring of possession to the lessor ''for the purpose of so restoring the same.'' ▓▓ The mere fact that the subsequent clause affirmatively delineates the lessor's obligation in terms of repair alone is of no great consequence. Indeed, an examination of the final clause of paragraph 19, wherein the lessee waives the provisions of Civil Code, section 1933, subdivision 4, ''[w]ith respect to any *damages* of the demised

premises which the Lessor is obligated to repair under the terms of this paragraph,'' (emphasis ours) conclusively establishes that the parties intended the words ''repair'' and ''damages'' to include a restoration of the premises after a total destruction of the building. If respondents were not obligated to restore the leased premises after a total destruction, the provision requiring appellant to waive the benefit of said code section would be utterly devoid of meaning.

Where a trial court construes a lease without the aid of extrinsic evidence, the construction of the lease presents a question of law, and a reviewing court is not bound by the trial court's interpretation. (*Livingston Rock & Gravel Co.* v. *De Salvo* (1955) 136 Cal.App.2d 156, 159-160 [288 P.2d 317].) We are satisfied on the record presented that paragraph 19 obligated respondent lessor to restore the demised premises after a total destruction by fire.

The judgment is reversed and the cause remanded for trial on the merits.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied November 5, 1962, and respondents' petition for a hearing by the Supreme Court was denied December 12, 1962.